OPINION
{¶ 1} Plaintiff-appellant, Shannon McHenry, appeals the decision of the Butler County Court of Common Pleas overruling his motions for a new trial and for judgment notwithstanding the verdict.
 {¶ 2} On April 24, 1998, appellant, an employee of appellee, Terry Materials, Inc., was injured while cleaning out a tank in the course of his employment. He filed a complaint on June 9, 2000, alleging that his injuries were due to an intentional tort by appellee.
 {¶ 3} At trial, Terry employees testified that they believed the tank contained liquid latex. The safety director and plant manager met and reviewed information on liquid latex and prepared a safety plan for cleaning out the tank. According to the safety director, the plan involved a Tyvek (paper-type) suit, rubber gloves and boots, forced air systems to ensure enough oxygen was circulating and a breathing apparatus. According to appellee's president, management and employees, the main danger from liquid latex comes from inhalation of fumes.
 {¶ 4} Appellant and the assistant plant manager went into the tank, which was filled with a milky semi-solid substance. According to appellant, when the liquid soaked through the Tyvek suit and his work clothes, he began to notice a burning sensation. When he emerged from the tank, removed the suit and oxygen hit his body, he began to experience more pain. Appellant went home and showered, then returned to work. However, he went back home when the burning continued to increase. The pain continued to increase and appellant went to the hospital the next morning. Doctors found that appellant had second degree burns over 30% of his body as a result of contact with the liquid substance.
 {¶ 5} After appellant and other employees were injured as a result of cleaning the tank, appellee determined that the tank did not contain liquid latex, as they had believed. Instead, the tank contained Redicote E-4819. The safety information for Redicote states that "skin contact can cause severe irritation or burns with redness, swelling and blistering" and advises protective equipment to prevent eye and skin contact.
 {¶ 6} A jury returned a verdict in favor of appellee. In an interrogatory, the jury found that appellant had failed to prove that appellee had knowledge of the existence of a dangerous instrumentality or condition within its business operations which ultimately caused appellant's injury.
 {¶ 7} Appellant filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. In a written decision, the trial court overruled both motions. Appellant now appeals the trial court's denial of his motions and raises two assignments of error.
Assignment of Error No. 1
 {¶ 8} "The trial court committed an abuse of discretion in denying the plaintiff's motion for a new trial by deciding that the findings of the jury were supported by competent, credible evidence."
Assignment of Error No. 2
 {¶ 9} "The trial court erred in denying the plaintiff's motion for judgment notwithstanding the verdict."
 {¶ 10} In his first assignment of error, appellant contends that the trial court erred by denying his motion for a new trial. Appellant moved for a new trial pursuant to Civ.R. 59(A)(6), arguing that the judgment was "not sustained by the weight of the evidence." The decision to grant or deny a motion for a new trial pursuant to Civ.R. 59 rests in the sound discretion of the trial court, and will not be reversed absent an abuse of that discretion. Sharp v. Norfolk W. Ry. Co. (1995),72 Ohio St.3d 307, 312; Dillon v. Bundy (1991), 72 Ohio App.3d 767, 773. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} Appellant argues that the trial court erred in finding competent, credible evidence to support the jury's decision. Specifically, appellant argues that there was no evidence to support the jury's determination that appellee did not have knowledge of the existence of the dangerous condition that caused appellant's injury.
 {¶ 12} Generally, an employee's only recourse for a workplace injury is through the Worker's Compensation System. However, where the employer's conduct is sufficiently "egregious" to constitute an intentional tort, an employee may institute a tort action against the employer. See Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172. To establish an intentional tort by the employer, the employee must establish all of the following elements: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. Gibson v. DrainageProducts, Inc., 95 Ohio St.3d 171, 2002-Ohio-2008, ¶ 16; Fyffe v.Jeno's (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
 {¶ 13} In this case, special interrogatories were submitted to the jury. The jury answered "no" to the following interrogatory:
 {¶ 14} "Do six or more of you find that the plaintiff has proved by a preponderance of the evidence that the defendant had knowledge of the existence of the dangerous instrumentality or condition within its business operations which ultimately caused the plaintiff's injury?" Appellant argues that the jury's determination was not sustained by the weight of the evidence because the trial court stated in its decision that liquid latex is a dangerous condition.
 {¶ 15} In its decision, the trial court stated "to meet the first element of an intentional tort, the Defendant must have had knowledge that liquid latex was a dangerous condition at the time of the incident." The trial court found that the testimony showed that liquid latex was a hazardous material, but that management and employees did not believe it was dangerous when utilizing the safety equipment.
 {¶ 16} The jury's interrogatory addresses the first requirement of the employer intentional tort test. To satisfy this requirement, an employee must demonstrate that (1) there was a dangerous condition within the employer's business operation and (2) that the employer had knowledge that the dangerous condition existed. Myers v. Simms Development Corp.
(Dec. 27, 2002), 2002-Ohio-7289, ¶ 30; Brookover v. Flexmag Ind.,Inc. (Apr. 29, 2002), 2002-Ohio-2404, ¶ 102. The focus of an intentional tort action is on the knowledge of the employer regarding the risk of injury. Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172. The employee must show that "the employer had `actual knowledge of the exact dangers which ultimately caused' injury." Id., quoting Van Fossenv. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 112; Cross v.Hydracrete Pumping Co., Inc. (1999), 133 Ohio App.3d 501, 506.
 {¶ 17} Much of the focus in this case, both by the parties and the trial court, revolved around whether the employer took sufficient precautions in dealing with the liquid latex. However, there is evidence that the dangers of liquid latex are different from the dangers of Redicote. Safety information for latex states that "[p]rolonged exposure to latex (when liquid) may irritate the skin." On the other hand, safety information for Redicote states that "skin contact can cause severe irritation or burns with redness, swelling and blistering." Appellant's injury was not a skin irritation, but second degree burns and blisters, and was not caused by latex, but by Redicote. Thus, the dangerous condition within the employer's business was the presence of Redicote in the tank, not liquid latex. There was no evidence presented at trial to establish that appellee was aware that the tank contained Redicote.
 {¶ 18} Thus, we find that there is sufficient evidence to support the jury's determination that appellee did not have knowledge of the existence of the dangerous instrumentality or condition within its business operations which ultimately caused the plaintiff's injury. Accordingly, the trial court did not abuse its discretion in denying appellant's motion for a new trial.
 {¶ 19} In his second assignment of error, appellant contends that the trial court erred by denying his motion for judgment notwithstanding the verdict. Motions for judgment notwithstanding the verdict are governed by Civ.R. 50(B). The standard for granting such a motion is the same as the standard for a motion for a directed verdict. Nickell v.Gonzalez (1985), 17 Ohio St.3d 136, 137, citing Ayers v. Woodard (1957),166 Ohio St. 138, paragraph one of the syllabus. In considering a judgment notwithstanding the verdict, the evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made. Osler v. Lorain (1986), 28 Ohio St.3d 345, 347. Where there is substantial, competent evidence upon which reasonable minds may reach different conclusions, the motion must be denied. Id.
 {¶ 20} As mentioned in the previous assignment of error, there was substantial, competent evidence from which the jury could determine that appellant failed to prove the first element of an employer intentional tort. An employee must prove all three elements to establish his case. See Gibson v. Drainage Products, Inc., 95 Ohio St.3d 171,2002-Ohio-2008, ¶ 16; Fyffe v. Jeno's (1991), 59 Ohio St.3d 115, paragraph one of the syllabus. Thus, the trial court did not err in denying appellant's motion for judgment notwithstanding the verdict. The second assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and VALEN, J., concur.