[Cite as *Haines v. Haines*, 2015-Ohio-4299.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JESSICA MARIE HAINES | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| RORY DANIEL HAINES | : | Case No. 15CA0003 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:         Appeal from the Court of Common
                                 Pleas, Domestic Relations Division,
                                 Case No. 2002DR25801

JUDGMENT:                        Affirmed

DATE OF JUDGMENT:                October 14, 2015

APPEARANCES:

For Plaintiff-Appellant                For Defendant-Appellee

KENNETH J. MOLNAR                      DONALD K. WICK
21 Middle Street                       23 East High Street
P.O. Box 248                           P.O. Box 15
Galena, OH  43021                      Mount Gilead, OH  43338

*Farmer, P.J.*

{¶1}   Appellant, Jessica Marie Haines, and appellee, Rory Daniel Haines, were granted a divorce on December 26, 2002.  The parties had one child, born December 22, 2000.   The parties agreed each would be allocated parental rights and responsibilities of the child when the child was in their care during their respective parenting time.  The agreement was not a shared parenting plan.

{¶2}   On December 8, 2006, appellee filed a motion for shared parenting.  The matter was referred to mediation.

{¶3}   On October 18, 2007, the trial court issued temporary orders, ordering each parent would be the designated residential parent on a week-to-week basis.

{¶4}   On March 19, 2008, the parties entered into an agreement to resolve their pending matters.  Parenting continued on a week-to-week basis.

{¶5}   On April 30, 2009, the trial court approved an agreed shared parenting plan submitted by the parties.

{¶6}   On November 6, 2013, appellee filed a motion to show cause regarding appellant's withholding of parenting time.

{¶7}   On December 16, 2013, appellant filed a motion to be designated legal custodian and terminate shared parenting plan.  The next day, appellee filed identical motions, seeking to be named the legal custodian of the child.  Appellee filed motions to show cause relative to appellant's withholding of parenting time on December 31, 2013, and January 8, 28, and February 11, 2014.

{¶8}   On March 13, 2014, the parties agreed to temporary orders regarding appellee's parenting time.

{¶9}   A hearing before a magistrate was held on October 17, 2014.  By decision filed November 12, 2014, the magistrate found a change of circumstance, namely, appellant withholding parenting time from appellee for three months and a lack of communication between the parties.  The magistrate determined the best interest of the child would be best served by terminating the shared parenting plan and naming appellee as the legal and residential custodian of the child.  The magistrate also found appellant in contempt of court for withholding parenting time from appellee and ordered her to pay his attorney fees in the amount of $900.00.

{¶10}  Appellant filed objections.  On April 2, 2014, by agreement of the parties, the trial court conducted an in camera interview of the child's counselor, Jessica Kaufman, due to her unavailability to attend a hearing.  By journal entry filed April 14, 2015, the trial court denied the objections and approved and adopted the magistrate's decision.

{¶11}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶12}  "THE COURT OF COMMON PLEAS ERRED AS A MATTER OF LAW IN FINDING THAT APPELLEE FATHER SHOULD BE DESIGNATED AS LEGAL CUSTODIAN OF THE CHILD PROVIDING LIMITED PARENTING TIME TO APPELLANT MOTHER AS SUCH DESIGNATION IS NOT IN THE BEST INTEREST OF THE CHILD AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

II

{¶13}  "THE TRIAL COURT ERRED AS A MATTTER OF LAW IN FINDING THE APPELLANT GUILTY OF CONTEMPT AND PENALIZING THE APPELLANT MOTHER THROUGH CHANGE OF CUSTODY TO THE APPELLEE FATHER."

I

{¶14}  Appellant claims the trial court's designation of appellee as the legal custodian of the child was not in the child's best interest and was against the manifest weight of the evidence.  We disagree.

{¶15}  A trial court's decision to terminate a shared parenting plan is reviewed under an abuse of discretion standard.  *In re J.L.R.,* 4th Dist. Washington No. 08CA17, 2009-Ohio-5812.  In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217 (1983).

{¶16}  On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).  See also, *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179.  In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings.  *Eastley* at ¶ 21.

{¶17} R.C. 3109.04 governs parental rights and responsibilities and shared parenting. Subsection (E)(2)(c) states the following in pertinent part: "The court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children."

{¶18} Subsection (E)(2)(d) states the following:

Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.

{¶19} Subsection (F)(1) states the following in determining the best interest of a child:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights:

***

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

***

{¶20} In *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007-Ohio-5589, syllabus, the Supreme Court of Ohio reviewed the termination of a shared parenting plan and held the following: "A modification of the designation of residential parent and legal custodian

of a child requires a determination that a 'change in circumstances' has occurred, as well as a finding that the modification is in the best interest of the child." *See Wright v. Wright,* 5th Dist. Stark No. 2011 CA00129, 2012-Ohio-1560.

{¶21} Appellant testified and admitted she withheld parenting time from appellee because of various incidents. T. at 69-70, 72-80. In an October 2013 incident, the child was exhibiting "frantic," "insane behavior," and in a December 2013 incident, the child spoke with his school counselor, Jennifer Stoval, who advised appellant to take the child to risk assessment. T. at 69-70, 73-75. Ms. Stoval testified and stated the child had said "he would rather kill himself or he would rather be dead than have to go to his dad's." T. at 120.

{¶22} After the withholding of parenting time, each party filed cross-motions for the termination of the shared parenting plan and the designation of legal custodian, and appellee filed numerous contempt motions. A hearing on the various motions was held on January 14, 2014. During this hearing, the trial court appointed a guardian ad litem and issued guardian ad litem orders and did not address the shared parenting plan/contempt issues. Appellant argues the delay in resolving the issues resulted in her further denial of appellee's parenting time.

{¶23} As an old proverb says, "the wheels of justice turn slowly, but grind exceedingly fine." We find appellant's shouldering of her actions off to the trial court misses the issue raised sub judice. The central issue is not what is in the best interest of the parent, but what is in the best interest of the child.

{¶24} Testifying at the hearing were appellant, appellee, Ms. Stoval, and the child's guardian ad litem, Samantha Garnes. The magistrate also interviewed the child

in camera.   In an extensive and thorough decision filed November 12, 2014, the magistrate concluded the following:

> Based on the testimony of the parties, and the recommendation of the GAL, the shared parenting decree should be terminated and the father should be named the legal and residential custodian of the minor child. The minor child should live with his father during the week and begin attending school in Northmor School District for the 2015-2016 school year.  [J.] have a graduated integration period that would be a week-to-week period between the mother and the father until the Christmas break, and at that time, [J.] would be fully integrated into his Dad's home during the week.  Full integration would commence on December 21, 2014 and the winter break with his mother would begin at 1:00pm on Christmas Day.
>
> ***
>
> In this case, the parents are not able to communicate, and this was made very clear at the hearing.  The mother did not contact the father when problems surrounding the child's behavior and threats of suicide led to her to unilaterally decide to keep the child from the father.  The father also did not contact the mother during the times the child was kept from him other than by text messaging.  There is no reason to maintain a shared parenting plan under these set of circumstances.
>
> In making this decision, it has not escaped the Court's attention that the minor child is doing well in the Cardington School District where he

has attended since Kindergarten. However, neither parent lives in the Cardington School District. The Mother lives in Mount Gilead and the father lives in the Northmor School District. The Defendant has agreed that [J.] should finish this school year in Cardington. That the child is doing well at the Cardington School District is not the only factor to be considered in determining what is in the child's best interest. The child has had anxiety issues while living with his mother, even going to the lengths of threatening to commit suicide while he was at school. There was also an incident in school involving [J.] yelling at a young girl, and the Plaintiff expressed concern to the GAL that the stress was causing [J.] to "binge eat" and gain weight.

By her actions, the Plaintiff has not fostered a good atmosphere in her home, especially toward the father. She has kept the child away from the father for months at a time. She has testified that she would not take the child "screaming and kicking" to his father's home.

From the testimony of the parties, the atmosphere at the father's house is more structured and disciplined. There are definite boundaries. For example, [J.] cannot just go out of the house without first asking permission, whereas this does not appear to be the case at his mother's house. This structure as the GAL noted in her testimony will be good for the minor child even if it is not what he wants. Both parents need to be involved in the child's life.

{¶25} We find these observations and conclusions are readily supported by the record. In particular, the guardian ad litem recommended that the shared parenting plan should continue and the child should be reintegrated into appellee's home on a full-time basis, basically that appellee should have the child during the school week, despite the child's objections to living in his father's home. 129-130, 132-135.

{¶26} In reviewing the statutory considerations under best interest, the guardian ad litem found the facts pursuant to R.C. 3109.04(F)(1) to be more favorable to appellee as opposed to appellant. *See* Guardian ad Litem Report filed under seal October 10, 2014 and reviewed by this court on September 23, 2015.

{¶27} Credibility and attitude are issues to be decided by the trier of fact. The trier of fact is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984). "[D]eferential review in a child custody determination is especially crucial 'where there may be much evident in the parties' demeanor and attitude that does not translate to the record well.' " *Wright v. Wright,* 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138, ¶ 20, quoting *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 1997-Ohio-260. This standard is reflected in the trial court's deference to the magistrate's decision on the issue of credibility (Journal Entry filed April 14, 2014):

Although this Court has wide discretion with regard to the review of a Magistrate's Decision upon objections thereto, the Court always desires to maintain the integrity of the system by not changing the Magistrate's

proposed decision unless it is clearly without support based on the evidence. The Magistrate was the hearing officer who heard the testimony and viewed the demeanor of the witnesses. In this case, the Magistrate has made a reasoned decision based upon competent evidence in support thereof. Both the Magistrate and the undersigned have some legitimate concerns for the effect of the change of custody on this child, especially with regard to the period of transition into the home of the father and a change of school districts.

{¶28} Appellant argues this is an abrogation of the trial court's duty to enter an independent judgment on the issues raised. We disagree and find such comment acknowledges the rule adopted by reviewing courts that credibility, attitude, objectivity, and obedience to court orders are better determined by the one who actually observes the witnesses at trial.

{¶29} Although the child is resistive to the change, appellant's attitude in initially withholding parenting time and not communicating with appellee created the situation so that the child now believes he is the victim. Appellant was the architect of her own demise in not properly facilitating visitation and communication with appellee.

{¶30} Both the magistrate and the trial court faced this difficult situation with deference to the statutory mandates of R.C. 3109.04(F)(1) and made a hard choice. We find the decision to be supported by the record. Unfortunately, the plan to gradually integrate the child into his new home and school district has been delayed by the appeal and the trial court's stay orders.

{¶31} Upon review, we find the trial court did not abuse its discretion in terminating the shared parenting plan and designating appellee as the legal and residential custodian of the child.  We do not find a manifest miscarriage of justice.

{¶32}  Assignment of Error I is denied.

II

{¶33}  Appellant claims the trial court erred in finding her in contempt and ordering her to pay appellee's attorney fees.  We disagree.

{¶34}  In *Windham Bank v. Tomaszczyk,* 27 Ohio St.2d 55 (1971), syllabus, the Supreme Court of Ohio held the following:

> 1. Contempt of court is defined as disobedience of an order of a court.  It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.
>
> 2. The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice.
>
> 3. The purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court, and the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt.

{¶35}  The burden of proof for civil contempt is clear and convincing evidence. *Flowers v. Flowers,* 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972.  "Clear and

convincing evidence" is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. A decision on contempt is within the discretion of the trial court. *Flowers, supra; Blakemore.*

{¶36} In her decision filed November 12, 2014, the magistrate found the following:

The Defendant filed four subsequent motions to show cause. On December 31, 2013, the Defendant filed a motion to show cause about the denial of parenting time during the Christmas Holidays. The Defendant filed a motion to show cause on January 18, 2014, because the Plaintiff continued to keep the minor child away from him. The January 28, 2014 and February 11, 2014 motions to show were based on a continuation of the denial of parenting time. During the hearing, the Plaintiff admitted that she kept the child away from the Defendant for a three month period of time based on a situation that happened at school on December 16, 2013. The minor child was upset and stated that he would "rather die" than go to see his father. The school counselor, Jessica Stovall testified that he seemed genuinely anxious and upset but did not have a specific plan to commit suicide. Erring on the side of caution, she advised the Plaintiff to take the child to the hospital for an evaluation, which she did. The counselor who saw the child, Mike McGrady, wrote a letter which was admitted into evidence that since [J.] was being released to the care of his

mother and reported that he would maintain safety there, the child was not an imminent threat to the safety of self or others and referred the child to his therapist, Dr. Pat Early.  For some reason, the Plaintiff decided that Mike McGrady's recommendation gave her a carte blanche to keep the child away from his father without any explanation for three months.  As the GAL opined, this incident and its aftermath did not warrant the Plaintiff's behavior of keeping the child away from his father for such an extended time.  This separation served to increase the child's anxiety.

At the hearing, the Plaintiff admitted to keeping the child away and the Court finds that the Plaintiff is in contempt of court and should purge her contempt by paying the Defendant's attorney's fees.  The Defendant's post-hearing brief suggested that the Defendant pay $900.00 for attorney's fees and the filing fee.  There is no filing fee for a motion to show cause in an open case.  The Court did not hear any testimony that this is a reasonable amount but the Court will rely on upon its general knowledge of the reasonableness of fees and award the Defendant $900.00 in attorney's fees.

{¶37} In approving and adopting the magistrate's decision, the trial court ordered the following in its journal entry filed April 14, 2015:

8. The Plaintiff/mother is in contempt of this Court for her failure to provide the Defendant/father parenting time with the minor child on

October 11, 12 and 13, 2013 and from December 19, 2013 to approximately March 13, 2014. To purge that contempt, the Plaintiff/mother shall pay $900.00 in attorney's fees by September 1, 2015.

{¶38} The trial court determined appellant was in contempt for withholding appellee's parenting time and her claims of "self-help" without regard to the trial court's orders were not justified.

{¶39} The record is clear that appellant withheld appellee's parenting time as alleged. T. at 22-23, 35-36, 38, 41-42, 68-70, 72-74, 77-78, 80-82. Appellant was not free to unilaterally disregard the trial court's orders and apply her own version of self-help.

{¶40} Although no testimony was taken on the reasonableness of the amount of attorney fees, appellant did not object to the amount, just the contempt finding. Objections filed November 26, 2014. A "party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion***unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Civ.R. 53(D)(3)(b)(iv).

{¶41} Upon review, we find the trial court did not err in finding appellant in contempt.

{¶42} Assignment of Error II is denied.

{¶43} The judgment of the Court of Common Pleas of Morrow County, Ohio, Domestic Relations Division is hereby affirmed.

By Farmer, P.J.

Delaney, J. and

Baldwin, J. concur.

SGF/sg 923